IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMQUIP CRANE RENTAL, LLC :<br>　　　　Plaintiff,　　　　　　　:<br>　　　　　　　　　　　　　　　:<br>v.　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　:<br>N.L. CARSON CONSTRUCTION CO., :<br>INC., and TRAVELERS PROPERTY　:<br>CASUALTY COMPANY OF AMERICA :<br>　　　　Defendants.　　　　　　:  | CIVIL ACTION NO. 15-1924 |

## MEMORANDUM OPINION

**Rufe, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**March 13, 2017**

Plaintiff AmQuip Crane Rental, LLC leased a crane to Defendant N.L. Carson Construction Co., Inc. for use at a construction project in Mississippi. While in Carson's control, the crane suffered a mishap and was irreparably damaged.[1] AmQuip sued Carson and Carson's insurer, Travelers Property Casualty Company of America, seeking the replacement value of the crane, continuing rental payments until the crane is repaired or replaced, and interest, costs, and counsel fees.[2] The value of the crane was paid while the case was pending, but AmQuip seeks the other damages, and has moved for summary judgment, which Defendants oppose. For the reasons set forth below, the motion will be granted in part and denied in part.

### I.　　FACTS AND BACKGROUND

Many of the relevant facts are not in dispute. The parties agree that AmQuip leased the crane to Carson, that on September 16, 2014, the crane was damaged while in Carson's control,

---

[1] Specifically, it appears that while the crane was being operated on rubber tires with the outriggers retracted, and "a majority of the boom was scoped out with the lattice offset jib affixed to the side of the base," the crane overturned. Ex. D to Statement of Uncontested Material Facts [Doc. No. 23-6].

[2] AmQuip filed suit in state court, and Travelers removed the action to this Court on the basis of diversity jurisdiction.

and that Carson's insurance policy with Travelers named AmQuip as an additional insured and loss-payee in the amount of $325,000, the agreed value of the crane. The parties now agree that the crane is beyond repair, but that was not always the case.

AmQuip's claims adjuster inspected the crane soon after it was damaged and declared it a total loss and AmQuip took the position that even if the crane could be repaired, the cost (estimated to be $372,948.28) would exceed its value. In contrast, the inspector initially hired by Travelers estimated the cost of repair at $65,403.75, based upon a visual inspection, and Travelers made partial payment to AmQuip. AmQuip objected to this estimate, and Travelers requested that the crane be disassembled to allow further investigation of the crane's internal components, and offered to pay $25,775 for the disassembly costs. AmQuip agreed (although it thought it unnecessary) to disassemble the crane if Travelers advanced $65,000 to cover the anticipated cost, with any funds not spent to be returned to Travelers. Travelers offered to advance $45,000 for this purpose. The parties could not reach agreement on this point, and AmQuip filed suit.

During a settlement conference before Magistrate Judge Carol Sandra Moore Wells, the parties agreed that Travelers would arrange for an outside crane equipment company to examine the crane. The new inspector, after reviewing documents and photographs, and without the crane being disassembled, concluded that the crane was a total loss. On March 16, 2016, Travelers delivered payment of $279,920.34 to AmQuip, representing the full amount due under the policy for the value of the crane, continuing rental payments, and inspection costs, less payments made earlier.

**II.     STANDARD OF REVIEW**

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[4] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[6] Further, a court may not weigh the evidence or make credibility determinations.[7] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[8] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[10] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[11]

---

[3] Fed. R. Civ. P. 56(a).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[7] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[9] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[10] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[11] *Wisniewski v. Johns-Manville Cor*p., 812 F.2d 81, 83 (3d Cir. 1987).

3

**III.   DISCUSSION**

    **A.   Choice of Law**

As an initial matter, the Court must determine which state's substantive law to apply. Plaintiff is a Pennsylvania company, Carson is a Mississippi company, the crane was shipped to, used, and damaged in Mississippi, and the relevant insurance policy was delivered in Mississippi. A federal court sitting in diversity applies the choice-of-law rules of the forum state, here Pennsylvania. Pennsylvania determines choice of law by first assessing whether there is a true conflict between the relevant laws of the states concerned, which occurs "[w]hen both states' interests would be harmed by the application of the other state's law . . . ."[12] If there is a true conflict, then a court must examine the "policies and interests underlying the particular issue before the court" and apply the law of the state with the "most interest in the problem."[13]

This case mostly involves a straightforward application of principles of contract interpretation, and it does not appear that there is a dispute between Pennsylvania and Mississippi law in that regard. However, there may be a conflict that bears on AmQuip's claim for prejudgment interest against Travelers. Under Pennsylvania law, prejudgment interest is mandatory, and awarded from the time performance becomes due.[14] Pennsylvania law is not clear on whether prejudgment interest may be awarded when full payment is tendered before a court renders judgment. However, the Supreme Court of Mississippi recently held that the resolution of an insurance dispute other than by the entry of a judgment or decree precludes an

---

[12] *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229-30 (3d Cir. 2010) (internal quotation marks and citation omitted).

[13] *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) (internal quotation marks and citation omitted).

[14] *See, e.g., Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs.*, 685 A.2d 141, 148-49 (Pa. Super. Ct. 1996).

award of prejudgment interest.[15]  Therefore, the Court must decide which state has the most interest in the resolution of this dispute.  AmQuip and Travelers both relied upon Mississippi law, while Carson applied Pennsylvania law.[16]  Because the performance of both the crane rental agreement and the insurance policy was in Mississippi, where the insurance policy was delivered and where the loss occurred, the Court concludes that Mississippi has the greater interest in this case, and will apply Mississippi law.

    **B.**    **Contractual Damages against Carson**

AmQuip argues that pursuant to the rental agreement, Carson owes the following damages:  $99,617 for rental payments from October 2014 through March 2016;[17] $11,722.23 in costs for inspections of the crane; and $56,843.93 in legal fees and costs.[18]  The agreement between AmQuip and Carson provided for a rental period from at least August 26, 2014, through October 17, 2014, at a rate of $408.33 per day, $1,634.00 per week, or $4,900.00 per month.[19]  The standard terms provided in relevant part:

> 4.    RETURN OF EQUIPMENT -- Lessee shall return the Equipment . . . in the same condition as when received by Lessee, excepting normal wear and tear resulting from normal proper use. . . .  Lessee shall pay in addition to any costs of repair, additional rental for each day until the Equipment is rendered not inoperable . . . .

---

[15] *Sweet Valley Missionary v. Alfa Ins. Corp.*, 192 So. 3d 990, 992 (Miss. 2016).

[16] In response to Carson's argument, AmQuip contended that the law of both states could be applied interchangeably.  Doc. No. 26 at 2.

[17] Travelers paid for the full value of the crane on March 16, 2016, but in its motion AmQuip seeks payments through March 18, 2016.  In its reply brief, AmQuip extends the period of claimed rent due until March 28, 2016, "the end of the last monthly rental period."  Reply brief at 7 [Doc. No. 26].

[18] This figure, set forth in AmQuip's reply brief, adds counsel fees associated with the filing of the Motion for Summary Judgment to the original fee request of $36,995.27.  *See* Reply Brief at 14 [Doc. No. 26].

[19] Ex. A to Statement of Uncontested Material Facts at 2 [Doc. No. 23-2].

5

5. RENTAL PAYMENTS -- Lessee shall pay all rental payments, (including rental of Equipment and crew) in advance, without deduction for Equipment down-time, set-off or counterclaim or for any other reason, commencing when this lease begins and continuing on the same day of each period thereafter (weekly, monthly, or yearly). . . . Rental of Equipment for less than a month shall be at Lessor's standard prevailing weekly rental payment rate. Rental of Equipment for less than a week shall be at Lessor's standard prevailing daily rental payment rate. . . . Unpaid rentals, and other charges due by Lessee to Lessor shall bear a delinquency charge of two percent per month, but not in excess of the maximum permitted under applicable state law, unless paid within ten (10) days of the due date. Rental payment shall not abate but shall continue to be paid if any of the Equipment is stolen, lost, damaged or destroyed or while any of the Equipment is being serviced, repaired or is otherwise inoperable for any reason, including, without limitation, inclement weather. Rental payments received by Lessor may be applied in such order as Lessor shall deem advisable in its sole discretion.

6. TAXES AND GOVERNMENTAL ASSESSMENTS -- Lessee shall pay, or shall reimburse Lessor [on] demand if Lessor is required to pay, any and all taxes, assessments, penalties, fines, license or registration fees and other charges imposed, levied or assessed by any governmental authority, local, state, or federal, by reason of the ownership, possession, leasing, operation or use of the Equipment or by reason of payment of any rental payments (except where prohibited by law).

11. DAMAGE TO OR DESTRUCTION OF EQUIPMENT-- Lessee shall bear the sole risk of all theft, loss, damage or destruction to the Equipment and shall indemnify Lessor from any theft or loss of or damage or destruction to the Equipment howsoever caused during the lease term. If the Equipment is stolen, lost, damaged or destroyed, Lessee shall notify Lessor in writing within 24 hours of its occurrence, specifying the extent and nature of the occurrence.[20]

The agreement also provided in paragraph 12 that "Lessee shall maintain All Risk Physical Damage Insurance with Lessor named Loss Payee covering replacement value of the Equipment as set forth above for its theft, loss, damage or destruction from any cause, including, but not limited to, fire, theft, flood, explosion, overturn, accidents and Acts of God occurring

---

[20] *Id.* at 3.

during the lease term."[21]  Finally, paragraph 21 states that "Lessee shall pay all costs of collection of any sums due hereunder including, but not limited to, court costs and a reasonable attorney's fee not to exceed than [*sic*] 15%."[22]

Under Mississippi law, a cause of action for breach of contract requires "(1) the existence of a valid and binding contract; (2) breach of the contract by the defendant; and (3) money damages suffered by the plaintiff."[23]  "[W]hether a contract is ambiguous is always a question of law for the court, whereas the jury determines the meaning of ambiguous provisions."[24]  "If the language in the contract is clear and unambiguous the intent of the contract must be effectuated," and "[o]nly when the intent of the parties is not clear the Court should then resort to extrinsic evidence."[25]

### 1. Rental Payments

AmQuip seeks from Carson rental payments in the amount of $99,617, for the period from October 17, 2014 (the last date for which rent was paid) to March 18, 2016. Carson argues that the agreement is ambiguous on a key point:  when rent payments were meant to end if, as happened, the crane was destroyed instead of damaged.  Carson contends that because Plaintiff's inspector declared the crane a total loss on October 31, 2014, no rent payments were due after that date.

---

[21] *Id.*

[22] *Id.* at 4.

[23] *Guinn v. Wilkerson*, 963 So. 2d 555, 558 (Miss. Ct. App. 2006) (citation omitted).

[24] *Franklin Collection Serv., Inc. v. Collins*, 206 So. 3d 1282, 1285 (Miss. Ct. App. 2016) (citation omitted).

[25] *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003) (citations omitted).

The plain language of the agreement states in paragraph 5 that "[r]ental payment shall not abate but shall continue to be paid if any of the Equipment is stolen, lost, damaged or destroyed or while any of the Equipment is being serviced, repaired or is otherwise inoperable for any reason . . . ." Paragraph 4 of the agreement similarly provides that Carson would be responsible for "additional rental for each day until the Equipment is rendered not inoperable." There is no dispute that the crane was destroyed, or that it was inoperable for the period until the loss was paid. The language is not ambiguous: the rental payments were owed until AmQuip was compensated for the destruction of the crane.[26] That occurred on March 16, 2016.

Carson also argues that AmQuip cannot recover sales tax of seven percent on the rental payments. Plaintiff has produced evidence in its reply that before the crane was damaged, AmQuip billed Carson for the rent plus Mississippi sales tax of seven percent, which Carson paid. However, although not highlighted by the parties, the record shows that after the crane was damaged, it was returned to AmQuip's facility in Nashville, Tennessee.[27] Plaintiff has not established on this record that any sales tax would be payable to Mississippi when the crane has not been used or even located in that state since October 2014.[28] The Court cannot grant

---

[26] *See Active Crane Rentals, Inc. v. Environmental Health Research and Testing, Inc.*, 1992 WL 91143, at *2 (Del. Super. Ct. Apr. 29, 1992) (holding that language that "[r]ental payments shall not [abate] but shall continue to be paid if any of the Equipment is stolen, lost, damaged or destroyed or while any of the Equipment is being serviced, repaired or is otherwise inoperable" is "susceptible of only one meaning, namely, that the Lessee of the equipment is liable for rent until the equipment is returned if the equipment has been damaged prior to being returned by Lessee and that if the equipment is returned in inoperable condition, Lessee must pay rental until the equipment is rendered operable."). The language of the insurance policy supports this as the only reasonable interpretation; it provides that "[i]n the event of loss of or damage to leased or rented "Contractors Equipment" from any of the Covered Causes of Loss, we will pay the amount for which you are legally liable for lease or rental payments, as stated in the written contract or agreement for such property, *until such time as the property can be repaired or replaced*." Ex. B-1 to Statement of Material Facts at TRAV-0018 [Doc. 23-3] (emphasis added).

[27] Ex. D to Statement of Material Facts at 2 [Doc. No. 23-6].

[28] The Court also notes that neither the correspondence surrounding the crane dispute, nor the Complaint, referenced sales tax.

summary judgment as to the sales tax, and will grant summary judgment for rent at the base monthly rental rate of $4,900 through March 16, 2016 (when the claim was paid), for a total of $89,834, plus any applicable interest.

### 2. Costs and Fees

Plaintiff seeks reimbursement for costs associated with appraisal and inspections of the crane as costs of collection under paragraph 21 of the agreement, costs of repair under paragraph 4, or pursuant to the indemnification clause in paragraph 11. Carson does not dispute the amount of these costs, but argues that they do not constitute costs of collection, because AmQuip stated that the appraisals were ordered to determine the extent of damage to the crane.[29] It is not disputed that the costs were an integral part of establishing whether the crane could be repaired or had to be replaced, and therefore, the costs are recoverable pursuant to paragraph 4 of the agreement. The Court will grant the motion as to $11,722.23 for the appraisal and inspection costs, plus any applicable interest.

Finally, as to Carson, AmQuip seeks its legal fees, in the amount of $56,843.93, pursuant to paragraph 21 of the agreement, which as quoted above provides that "Lessee shall pay all costs of collection of any sums due hereunder including, but not limited to, court costs and a reasonable attorney's fee not to exceed than [*sic*] 15%." Although AmQuip has not attached documentation of the legal fees, Carson does not challenge the reasonableness of the amount sought. Carson does argue that the provision in the agreement is ambiguous because it does not define to what amount the fifteen percent should be applied. Carson further argues that even if fees are warranted, the motion for summary judgment seeks $239,457.23, which would limit

---

[29] Carson's opposition brief at 11 [Doc. No. 24].

legal fees and costs to fifteen percent of that amount, or $35,918.58. The Court disagrees. The reasonable meaning of paragraph 21 is that legal fees shall not exceed fifteen percent of the amount collected through the efforts of counsel. In this case, Plaintiff has been paid, or established an entitlement to, at least $381,476.57 (the $279,920.34 paid on March 16, 2016, $89,834 in rental payments, and $11,722.23 in inspection and appraisal costs).[30] Fifteen percent of that amount would be $57,221.49, more than the fees sought. The Court will grant summary judgment in the amount of $56,843.93.

### C. Interest against Travelers

Travelers undisputedly has paid the policy limits as to the value of crane, rental payments, and investigation and appraisal costs. AmQuip, however, seeks to hold Travelers liable for: (1) interest arising from the failure to timely pay the replacement value of the crane, in the amount of $90,181.07; (2) interest arising from the failure to timely pay the $15,000 policy limit on rental payments, in the amount of $4,479.94; and (3) interest arising from the failure to timely pay $4,920.34 for AmQuip's investigation and appraisal costs, in the amount of $759.80. AmQuip argues that either prejudgment interest is due or that Travelers is obligated to pay the rate of two percent per month for unpaid rentals, as set forth in the agreement between AmQuip and Carson.

Travelers opposes summary judgment, arguing that it has paid all amounts it was required to under the policy, that it cannot be held to any interest based on the agreement between AmQuip and Carson, and that prejudgment interest is unwarranted because AmQuip failed to cooperate in the inspection and evaluation process, citing provisions of the insurance policy that

---

[30] This total does not take into consideration the interest sought against Travelers, which is discussed below.

require the insured to permit Travelers "to inspect the property proving the loss or damage" and to "cooperate with [Travelers] in the investigation or settlement of the claim,"[31] which Travelers argues precludes a claim for prejudgment interest.

First, there is no basis for an assertion of liability against Travelers based upon the agreement between AmQuip and Carson. Travelers has paid the full amount under the policy, and AmQuip has cited no basis by which it can assert a further claim.

Second, the Court concludes that a recent decision of the Mississippi Supreme Court precludes an award of prejudgment interest. In *Sweet Valley Missionary Baptist Church v. Alfa Insurance Corp.*, the insured filed suit against its insurer, alleging that it had undervalued a claim for storm damage.[32] After suit was filed, the insurer invoked an appraisal provision in the policy, and the appraiser set a value, which the insurer then remitted in full to the insured. The court held that Mississippi law only permits prejudgment interest on judgments or decrees and that because the parties had resolved the dispute through the appraisal process, there was nothing more for the Court to decide and prejudgment interest could not be awarded.[33] In this case, similarly, the parties agreed to an additional inspection of the crane, after which Travelers paid the full amount due under the policy. Because "no dispute remain[s] for adjudication" between Travelers and AmQuip, there is no basis for an award of prejudgment interest.[34]

---

[31] Ex. B to Statement of Material Facts at TRAV-0014 [Doc. 23-3].

[32] 192 So. 3d 990, 990-91 (Miss. 2016).

[33] *Id.* at 991 (citing Miss. Code Ann. § 75-17-7.

[34] *Id.* at 992.

## IV.     CONCLUSION

For the reasons set forth above, the Court will grant the motion as to Carson, except with regard to the sales tax, and deny the motion as to Travelers. An appropriate order will be entered.